IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

THOMAS JAMES BOEHM, )
INDIVIDUALLY AND DERIVITIVELY )
ON BEHALF OF OAK ARBOR ) 2:21-CV-00529-MJH
RESTAURANT MANAGEMENT, LLC; )
 )
        Plaintiff, )
 )
vs. )
 )

WILLIAM BRIAN SLUDER,

        Defendant.

## OPINION

Plaintiffs, Thomas James Boehm, Individually and Derivatively on Behalf of Oak Arbor Restaurant Management, Limited Liability Company (LLC), bring the within action against Defendant, William Brian Sluder, claiming Breach of Fiduciary Duty, Unjust Enrichment, Conversion, Breach of Contract, Fraud, and Statutory Dissolution. (ECF No. 1-3 at ¶¶ 38-77). Plaintiffs filed their Complaint in the Beaver County Court of Common Pleas on March 12, 2021. *Id.* at p. 5. Mr. Sluder filed an Answer to the Complaint in the Beaver County Court of Common Pleas on April 20, 2021. (ECF No. 1-5). Mr. Sluder also filed a timely Notice of Removal on April 20, 2021. (ECF No. 1). In response, Plaintiffs filed a Motion to Remand pursuant to 28 U.S.C. § 1447(c), arguing that this Court lacks subject matter jurisdiction over this action because the parties do not maintain the requisite diversity of citizenship. (ECF No. 5). Mr. Sluder then filed a Brief in Response to the Plaintiffs' Motion for Remand, denying membership in Oak Arbor Restaurant Management, LLC to defeat diversity of citizenship between the parties. (ECF No. 14). The matter is now ripe for decision.

Upon consideration of Plaintiffs' Complaint (ECF No. 1-3), Mr. Sluder's Answer (ECF No. 1-5), Mr. Sluder's Notice of Removal (ECF No. 1), Plaintiffs' Motion to Remand to State Court (ECF No. 5), Mr. Sluder's Brief in Response to the Motion for Remand (ECF No. 14), and the respective briefs of the parties (ECF Nos. 1-5, 6, & 15), and for the following reasons, Plaintiffs' Motion to Remand to State Court will be granted.

I.    **Background**

Mr. Boehm and Mr. Sluder had "a close relationship, for many years" before starting a business together. (ECF No. 1-3 at ¶ 4). In November 2015, Mr. Boehm and Mr. Sluder formed Oak Arbor Restaurant Management, LLC (Oak Arbor), by registering Oak Arbor with the Pennsylvania Department of State and creating an operating agreement to govern the company. *Id.* at ¶ 5. The Oak Arbor Operating Agreement outlines various provisions for the company, including the rules governing its formation, management, dissolution, and termination. (ECF No. 14-2). [1] The Operating Agreement also indicates that Mr. Sluder possesses a 60 percent ownership in the company while Mr. Boehm retains a 40 percent interest in the company. *Id.* at p. 27. The primary purpose of Oak Arbor was "the creation and operation of the restaurant/bar" called the "Oak Arbor Restaurant." (ECF No. 1-3 at ¶ 9).

Oak Arbor Restaurant opened in June 2016. *Id.* at ¶ 13. While the parties agree that initially, they were both "actively involved in the Restaurant's day to day operations and management" (ECF No. 1-3 at ¶ 15), they disagree on the events that transpired thereafter. (ECF Nos. 1-3 & 1-5).

---

[1] Attached to the original Complaint, Plaintiffs included an Operating Agreement for the Oak Arbor Restaurant Group, which is a Pennsylvania Limited *Partnership* and a nonparty to this suit. (ECF No. 1-4) (emphasis added). Thus, this Court is relying upon the "Amended and Restated Operating Agreement of Oak Arbor Restaurant Management, LLC" that was attached to Mr. Sluder's Brief in Response to Plaintiffs' Motion to Remand. (ECF No. 14-2). The Amended and Restated Operating Agreement reflects a name change in the LLC. *Id.* at p. 5. The original Operating Agreement for the Oak Arbor Restaurant Management, LLC has never been provided to this Court.

In their March 12, 2021Complaint , Plaintiffs aver that Mr. Boehm became sick in October 2016 and subsequently agreed to let Mr. Sluder operate the restaurant so long as Mr. Sluder kept Mr. Boehm "updated on the Restaurant's day to day operations, retain[ed] all receipts, and ke[pt] the books updated."  (ECF No. 1-3 at ¶¶ 16, 19).  However, Plaintiffs allege that during this time, Mr. Sluder failed to properly manage the restaurant and "adopted self-serving money management policies." *Id.* at ¶¶ 20-6.

In the Spring of 2019, Plaintiffs state that Mr. Boehm approached Mr. Sluder regarding the sale of the restaurant.  *Id.* at ¶¶ 27.  Plaintiffs allege that Mr. Sluder "reassured Thomas Boehm that he had everything under control," and he stated that the restaurant's financial troubles were due to "taxes, payroll, condo fees, vendors, and real estate taxes" *Id.* at ¶ 28.  However, by the fall of that year, Plaintiffs allege that Mr. Sluder told Mr. Boehm "that he wanted to lease business operations and that the Restaurant needed to be sold." *Id.* at ¶ 30.  In March 2020, the Oak Arbor Restaurant was indeed sold, with Mr. Boehm "paying one hundred percent of the closing costs."  *Id.* at ¶ 31.  Furthermore, Plaintiffs aver that Mr. Boehm lost his entire investment in the restaurant, and the Plaintiffs are now $350,000 in debt.  *Id.* at ¶¶ 32-4.  Accordingly, Plaintiffs brought the within action against Mr. Sluder, claiming Breach of Fiduciary Duty, Unjust Enrichment, Conversion, Breach of Contract, Fraud, and Statutory Dissolution.  (ECF No. 1-3 at ¶¶ 38-77).

On April 20, 2021, Mr. Sluder filed an Answer to the Complaint in Beaver County State Court, denying the Plaintiffs' allegations as well as asserting counter claims.  (ECF No. 1-5).  Mr. Sluder denies that Mr. Boehm relinquished control over the restaurant after he became sick in October 2016; rather, Mr. Sluder avers that Mr. Boehm remained engaged in the business operations despite his diagnoses.  *Id*. at ¶¶ 16-22.  In fact, Mr. Sluder argues that the restaurant's

financial transactions have been and continue to be properly recorded and accessible. *Id.* at ¶ 25. Mr. Sluder also denies practicing self-serving money management policies. *Id.* at ¶ 23. In addition, Mr. Sluder states that during this time, Mr. Boehm withdrew tens of thousands of dollars from the restaurant to pay personal taxes. *Id.* at ¶ 21.

Mr. Sluder also asserted counterclaims for damages from Plaintiffs. Mr. Sluder argues that Plaintiffs' business decisions directly caused Mr. Sluder to suffer financially. *Id.* at p. 8-9 ¶¶ 1-4. Specifically, Mr. Sluder avers that he has not been compensated for his management services or consulting services. *Id.* at ¶ 1-2. In addition, Mr. Sluder alleges that Plaintiffs owe Mr. Sluder's mother $17,000 in loans. *Id.* at ¶ 3. In total, Mr. Sluder seeks $441,000 in damages from the plaintiffs. *Id.* at ¶ 4.

In addition to his answer, Mr. Sluder filed a Notice of Removal, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (ECF No. 1). Mr. Sluder avers that the parties maintain diversity because Plaintiffs are residents of Pennsylvania while he is a resident of Ohio. *Id.* at ¶¶ 6-7. As to the remaining diversity jurisdiction component, Mr. Sluder contends that the amount in controversy exceeds the $75,000 threshold required under Section 1332. *Id.* at ¶ 7.

In their Motion for Remand, Plaintiffs allege that as of when the Complaint was filed, Mr. Boehm maintained an address at "63 Darlington Road, Apartment C23, Beaver Falls, Pennsylvania, 15010" and that Mr. Sluder maintained an address at "17324 Forbes Road, Wellsville, Ohio, 43968." (ECF No. 5 at ¶ 3). Plaintiffs argue that complete diversity between the parties does not exist because the citizenship of Plaintiff, Oak Arbor, a limited liability company, is determined by the citizenship of its members. Mr. Sluder, who possesses a 40 percent ownership interest in Oak Arbor, is a member of the company, and therefore his Ohio citizenship is also the citizenship of Oak Arbor. (ECF No. 5 at ¶¶ 2, 12). Accordingly, Plaintiffs

argue that because Plaintiff, Oak Arbor, and Defendant, Mr. Sluder, are citizens of the same state, Ohio, diversity of citizenship does not exist. Therefore, Plaintiffs argue that this Court lacks subject matter jurisdiction such that this case should be remanded to state court under 28 U.S.C. § 1447(c). (ECF No. 6 at p. 3-4).

## II.    Standard of Review

Section 1441 of Title 28, United States Code, controls the removal of a case to federal court.  Generally, a defendant may remove a case if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a).  However, "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).  A plaintiff may challenge removal and move to remand the case for lack of subject matter jurisdiction at any point before a final judgement is entered. 28 U.S.C. § 1447(c).  It is the defendant's burden to demonstrate that removal was proper. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005).  If the district court indeed lacks jurisdiction, the case is remanded to the state court from which it was removed.  28 U.S.C. § 1447(c).

## III.   Discussion

Diversity jurisdiction requires that each plaintiff be a citizen of a different state from each defendant and that the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a).  When a civil action has been removed to federal court based upon diversity jurisdiction, there must be complete diversity of citizenship of the parties. 28 U.S.C. § 1441(b).  The parties agree that the amount in controversy exceeds $75,000.  (ECF Nos. 1and 1-3).  Thus, the citizenship of each party is the only inquiry to determine diversity jurisdiction.  Diversity

jurisdiction depends upon Oak Arbor's citizenship and whether Mr. Sluder is a member of the LLC.  It is Mr. Sluder's burden to prove that removal, based on diversity jurisdiction, is proper. *Sikirica*, 416 F.3d at 219.

The citizenship rules for most persons and entities are settled.  *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).  For example, a person is a citizen of the state where they are domiciled.  *Id.*  A corporation is deemed to be a citizen of every state where it is incorporated and where it has a principal place of business.  28 U.S.C. § 1332(c).  An unincorporated entity, or a partnership, assumes the citizenship of each of its partners.  *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008).  In *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, the Third Circuit Court of Appeals determined the citizenship of a limited liability company and held that a limited liability company "should be treated as a partnership for purposes of establishing citizenship." 592 F.3d at 420.  Therefore, the citizenship of an LLC is determined by the citizenship of its members.  *Id.*

In their motion for remand, Plaintiffs argue that this Court lacks subject matter jurisdiction over this action.  (ECF No. 6).  Specifically, Plaintiffs contend that complete diversity is absent between the parties because the citizenship of an LLC is determined by the citizenship of its members, and where Plaintiff Mr. Boehm is a citizen of Pennsylvania and Defendant Mr. Sluder is a citizen of Ohio, Oak Arbor is a citizen of both Pennsylvania and Ohio.  *Id.* at p. 4.  Conversely, Mr. Sluder avers that complete diversity of citizenship exists between the parties and that removal is proper.  (ECF No.1).  Specifically, Mr. Sluder maintains that he is not a member of Oak Arbor; and therefore, both Plaintiffs are citizens of Pennsylvania while the sole Defendant is a citizen of Ohio.  (ECF No. 14).

Mr. Sluder argues that he is not a member of Oak Arbor for myriad reasons. *Id.* First, Mr. Sluder asserts that in November 2015 both he and Mr. Boehm formed Oak Arbor by "filing a certificate of operation with the Pennsylvania Department of State and executing an operating agreement to govern the operations of the business." *Id.* at p. 2. However, in March 2021, Mr. Sluder alleges he was unable to find his name on the Oak Arbor filings on the Pennsylvania Department of State website. *Id.* Instead, Mr. Sluder avers that he found Mr. Boehm listed as the owner of Oak Arbor. *Id.* Second, Mr. Sluder states that on May 29, 2016, Mr. Boehm texted Mr. Sluder demanding that Mr. Sluder be removed as an owner of Oak Arbor. *Id.* In addition, Mr. Sluder argues that, on May 31, 2016, Mr. Boehm drafted an amendment to the Oak Arbor operating agreement to remove Mr. Sluder as an owner of the company. *Id.* at p. 3. Mr. Sluder alleges that the amendment also specified that Mr. Sluder's ownership status was only to be restored if Mr. Boehm's initial investment was completely repaid. *Id.* Mr. Sluder maintains that, because this condition was never met and because an updated agreement establishing his ownership interest was not entered, he is not a member of Oak Arbor. *Id.* Further, Mr. Sluder asserts that his membership in Oak Arbor was subsequently "requested to be revoked by Plaintiff and agreed to by Defendant in May of 2016" because Mr. Sluder did not repay Mr. Boehm's initial investment. *Id.* Finally, Mr. Sluder argues that, Mr. Boehm's arrangement to sell Oak Arbor without Mr. Sluder's cooperation further evidences that Mr. Sluder does not possess any ownership interest in the company. *Id.* at p. 4.

Conversely, Plaintiffs assert that Mr. Sluder is a member of Oak Arbor. (ECF No. 15). Plaintiffs contend that Mr. Sluder signed the Oak Arbor Operating Agreement that details his 40 percent interest in the company. *Id.* at p. 1. In addition, Plaintiffs argue that Mr. Sluder's inability to find his name during an online search merely indicates that Oak Arbor was formed by

an organizer.[2]  *Id.* at p. 1-2.  The Plaintiffs also contend that operating agreements do not have to be filed with the State, which is why Mr. Sluder did not find his name on the Pennsylvania Department of State website.  *Id.*  Furthermore, Plaintiffs aver that the text message cited by Mr. Sluder "fails to support [his] allegations that he was removed as a member of Oak Arbor."  *Id.* at p. 2.  Plaintiffs posit that the accurate interpretation of the amended Operating Agreement is that Mr. Sluder "could acquire a larger share in the company if Mr. Boehm was repaid his initial investment."  *Id.*

Mr. Sluder has failed to meet his burden to prove diversity between the parties; he has not shown that he is no longer a member of Oak Arbor.  First, in his Answer, Mr. Sluder "admi[ted] the allegations of paragraph 6" of the Complaint, which read: "Per the Operating agreement of Oak Arbor LLC, Thomas Boehm possesses a sixty percent (60%) ownership interest and Defendant possesses a forty percent (40%) ownership interest in the business."  (ECF No. 1-5 at ¶ 6.  The Operating Agreement, which is titled "Amended and Restated Operating Agreement of Oak Arbor Restaurant Management, LLC" is attached to Mr. Sluder's brief in opposition.  (ECF No. 14-2).  Said Operating Agreement at Article III, "Members," governs the "Names, Addresses, and Contributions of Members," and provides that "Appendix A [of the Operating Agreement] shall . . . reflect each Member's percentage ownership of the Company.  *Id.* at p. 11.  Appendix A reflects Mr. Sluder's 40 percent ownership interest in Oak Arbor, and Mr. Boehm's 60 percent ownership interest.  *Id.* at p. 27. Furthermore, under Pennsylvania law, "[a]fter formation of a limited liability company, a person becomes a member . . . as provided in the operating agreement."  15 Pa.C.S.A. § 8841(d)(2).  The Operating Agreement is signed by both Mr. Boehm and Mr. Sluder.  *Id.* at p. 26.  Accordingly, by his own admission in his Answer, Mr.

---

[2] In Pennsylvania, "If the initial member [of an LLC] and the organizer are different persons, the organizer acts on behalf of the initial member."  Pa.C.S.A § 8841(a).

8

Sluder has admitted to being a member of the limited liability company and the limited liability company's citizenship, including Ohio.

The "Agreement of Partnership for Payment of Investment" outlines the terms under which ownership of Oak Abor might change. (ECF No. 14-5 at p. 2). Mr. Sluder argues that this supports that he is not a member. Mr. Sluder's argument lacks merit. The agreement provides that "On the death or incompetence of William Brian Sluder all of his shares in Oak Arbor Restaurant Management Group LLC . . . Shall be turned over to Thomas James Boehm." *Id.* These express provisions have not been met. The death or incompetence of Mr. Sluder are not alleged to have occurred. As such, this provision does not alter Mr. Sluder's status as a member.

Therefore, Oak Arbor is a citizen of both Pennsylvania and Ohio. Accordingly, because diversity between opposing parties does not exist, this Court does not have subject matter jurisdiction under 28 U.S.C. § 1332(a). Mr. Boehm's Motion for Remand to the Beaver County Court of Common Pleas will be granted.

### IV.   Conclusion

After considering of Plaintiffs' Complaint (ECF No. 1-3), Mr. Sluder's Answer (ECF No. 1-5), Mr. Sluder's Notice of Removal (ECF No. 1), Plaintiffs' Motion to Remand to State Court (ECF No. 5), the respective briefs of the parties (ECF Nos. 6, 14, and 15), and for the foregoing reasons, Plaintiffs' Motion to Remand to state court will be granted. This case will be remanded to the Beaver County Court of Common Pleas. A separate order shall follow.

BY THE COURT:

_____
Marilyn J. Horan
United States District Judge

Sent via mail to:

WILLIAM BRIAN SLUDER
17324 FORBES ROAD
WELLSVILLE, OH 43968